

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/12/2014

| | | |
|---|---|---|
| IN RE: | § | |
| **SANTANO A. GALO and** | § | **CASE NO. 13-30764-H4-11** |
| **LUDY A. GALO** | § | |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

**ORDER CONFIRMING THIRD AMENDED PLAN OF**
**REORGANIZATION AND APPROVING ADEQUACY OF DISCLOSURE**
**STATEMENT**
**[Docket No. 103]**

Santano A. Galo and Ludy A. Galo, as debtors and debtors-in-possession ("Debtors")

having proposed and filed their Third Amended Combined Plan and Disclosure Statement

(Docket No. 103) (the "Plan") under chapter 11 of the United States Bankruptcy Code; a hearing

on the disclosure statement and Plan having been held on June 12, 2014 (the "Confirmation

Hearing"); and the Court being aware of the relevant facts upon the record of the Confirmation

Hearing, the testimony of Santano A. Galo and the evidence presented:

**NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES:**

A. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334.

  Confirmation of the Plan is a "core" proceeding pursuant to, without limitation,

  28 U.S.C. § 157(b)(2)(A), (L), (M) and (O).

B. Notice of the Plan and the Disclosure Statement were mailed to all parties in

  interest on October 21, 2013.  Such notice is  adequate and sufficient.

C. The Court has reviewed the Disclosure Statement and has determined that the

  tentative and conditional approval of the Disclosure Statement should become

  final, and the Disclosure Statement contains "adequate information" as provided

  by 11 U.S.C. § 1125(a).

D.     The requirements for confirmation set forth in 11 U.S.C. §§ 1129(a) or 1129(b) have been satisfied.

E.     All fees payable under 28 U.S.C. § 1930 have been paid or will be paid as such fees become due.

F.     The foregoing findings and conclusions satisfy the requirements of Federal Rule of Bankruptcy Procedure 7052. All findings of fact shall also be deemed to be conclusions of law hereunder and vice versa. All offers of proof and discussions for the record at the Confirmation Hearing shall constitute additional findings and conclusions with respect to this Order.

**IT IS THEREFORE ORDERED:**

1.     The Disclosure Statement is finally approved as containing sufficient information pursuant to 11 U.S.C. § 1125.

2.     The only objections to the Plan having been withdrawn before or at this hearing.

3.     The Plan, as attached to this Order as Exhibit "A," is hereby confirmed. The terms of this Order are controlling if any inconsistency exists between the Plan and this Order.

4.     The Plan, its provisions and this Order shall be, and hereby are, binding upon the Debtor, any Creditor or equity security holder of the Debtor and any party provided notice of the case, whether or not the Claim or interest of such Creditor, equity security holder or party is impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

5.     The Debtors are hereby ordered to make all payments required by the Plan as set forth in Exhibit "B" attached hereto.

6.     Any person or party to an executory contract or unexpired lease that has been rejected by the Debtor, by the Plan or by operation of law (other than any contract

or lease previously rejected by the Debtor for which the Court established deadlines for filing claims pursuant to the prior orders) must file any claim for damages arising from such rejection with this Court no later than thirty (30) days after the Confirmation Date; or if the Claim arises from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than this Order) authorizing rejection of such contract or lease, the proof of claim must be filed within thirty (30) days after service of notice of the entry of such Final Order.  A Claim for damages that is not timely filed shall be forever barred and will not become an Allowed Claim, unless an extension of such time period is expressly granted by separate order of this Court.

7.      All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, including all requests for payment of Professional Fees, must be filed with the Court and served upon the Debtor no later than forty-five (45) days after the date of entry of this Order.

8.      Any fees due under 28 U.S.C. § 1930 shall be paid on the Closing Date.  The Debtor shall timely pay post-confirmation fees owed to the United States Trustee and assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to Chapter 7 or dismissing this case.  After confirmation, the Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each quarter or portion thereof that this chapter 11 case remains open in a format prescribed by the United States Trustee.

9.      The Court shall, and hereby does, retain jurisdiction of this case for all of the

purposes set forth in the Plan and for purposes provided in 11 U.S.C. §§ 1127(b)

and 1142 and Bankruptcy Rule 3020(d).

SIGNED this *12th* day of June, 2014.

Honorable Jeff Bohm
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SANTANO A. GALO and | § | CASE NO. 13-30764-H4-11 |
| LUDY A. GALO | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

## THIRD AMENDED PLAN OF REORGANIZATION
## AND DISCLOSURE STATEMENT

Santano A. Galo and Ludy A. Galo ("the Galos") file this Plan of Reorganization and Disclosure Statement. The Galos are seeking to repay their debts over time pursuant to the terms of their Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on the Galos and on all creditors and interest holders in this case.

The Galos represent that everything in this document is true to the best of their knowledge. **READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:**

Who can vote or object.

The treatment of your claim is (*i.e.*, what your claim will receive if the plan is confirmed).

The history of the debtors and significant events during the bankruptcy.

How the court will decide whether to confirm the plan.

The effect of plan confirmation.

Whether this plan is feasible.

## BACKGROUND

Mr. & Mrs. Galo filed a voluntary petition on February 5, 2013 that commenced this chapter 11 bankruptcy case. The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code. The automatic stay prohibits most collection activities against the Galos and their property. There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

The first date scheduled for the meeting of creditors under § 341(a) of the Bankruptcy Code was March 21, 2013. The meeting took place as scheduled and was concluded on that date.

When the Galos filed this bankruptcy case, all of their property became property of their bankruptcy estate. The Galos were allowed to claim that certain property should be treated as exempt property and excluded from the bankruptcy estate. On February 8, 2013, the Galos filed their list of claimed exempt property. Federal Rule of Bankruptcy Procedure 4003(b) requires that all objections to the claimed exemptions be filed not later than 30 days after the conclusion of the § 341 meeting of creditors. No timely objections to exemptions were filed. Accordingly, the exemptions have been allowed.

### 1. Description of Assets

The Galos filed schedules of all of their assets and liabilities on February 8, 2013. Complete copies of the schedules are available from the Clerk of the Court. The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|
| Cash | $ 6,416.80 | 0 | $ 6,416.80 | Actual Value |
| Various Tools | $ 5,000.00 | 0 | $ .00 | Estimated Value |
| 1999 F250 Diesel; 1986 BMW; 1995 Jaguar; 2001 Suzuki Motorcycle; 2012 Nissan Pathfinder (legal title only) | $ 4,900.00 | 0 | $ 4,900.00 | Estimated Value |
| Miscellaneous Furniture, Artwork and household goods, jewelry, etc | $ 3,375.00 | 0 | $ 0.00 | Estimated Value |
| Term Life Insur. | $ .00 | 0 | $ 0.00 | Actual Value |
| Stock in Galo Deliveries, Inc., and ownership in Kyal Truck Repair, Inc., G & D Truck & Trailer Repair, Inc., Zion Truck & Equip Repair, LLC, Albert Truck Sales, | $ 2,500.00 | 0 | $ 2,500.00 | Equity in Companies per balance sheets |

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|
| Tu Familia Meat Market, Galo Trucking Ltd., Albert Truck Service, Ltd., Mayco LSGA Muffler, Ltd. And BNRK Export Truck & Equip Sales, Ltd. | | | | |
| 1901 McCarty, Houston, TX, 13031 Market, TX and Manitou St., Houston, TX | $ 664,601 | $ 557,991 | $ 106,610 | HCAD |
| 17103 Water Oak Dr.,  Houston, TX | $  78,220 | $ 42,000.00 | $ 36,220 | HCAD |
| 4738 Cairnsean St., Houston, TX | $  85,824 | $ 38,147.00 | 0 | HCAD |
| Lot in San Miguel, El Salvador | $  75,000 | 0 | $ 75,000.00 | Estimated Value |
| Lot in New Caney, TX | $    500 | 0 | $ 500.00 | Estimated Value |
| | | TOTAL | $252,146.80 | |

The Galos have no lawsuits that may be filed by them.

## 2.    Events Leading Up to Bankruptcy

The Galos have made their living for themselves and their children by repairing and buying and selling trucks through their various businesses.  Currently Mr. Galo operates his business from the 13013 Market Street and the Manitou Property in East Houston, as well as from his primary location at 9838 Beaumont Hwy, Houston, TX.  The Beaumont Hwy location is owned by his business, Albert Truck Service, Ltd.  His primary business, GNRK Export Truck & Equipment Sales, Ltd. is the company that actually buys and sells the trucks.  The company business was adversely affected by Hurricane Ike in 2008 and the severe down turn in the economy which followed.  In recent months the business has begun to prosper, but only after Mr. Galo was able to stop dealing with the unpaid debts and the various collection efforts of his creditors, and return his attention to his businesses.  The case was filed on an emergency basis to try to stop the foreclosure

of the Beaumont Hwy property that had been owned directly by Mr. Galo. The foreclosure took place before the bankruptcy was filed, and the parties entered into an agreed order that recognized the validity of the foreclosure. The Galos decided to remain in Chapter 11 to work out the remainder of their indebtedness and hopefully obtain a fresh start.

### 3.   Sources of Income

In the last three years, the Galos' income has come from the operation of Albert Truck Sales, Galo Trucking Ltd., GNRK Export Truck & Equipment Sales, Ltd. and from the rental income derived from the Water Oak real property and the Market Street Real Property.

Income from Employment

| Year | Employer/Source | Amount of Income |
|------|-----------------|------------------|
| 2014 (thru April 30) | Income from Albert Truck Service, Ltd. and GNRK Export Truck & Equipment, Ltd. | 55,400 |
| 2013 | Income from Albert Truck Service, Ltd. and GNRK Export Truck & Equipment, Ltd. | 168,200 |
| 2012 | Operation of Albert Truck Sale (d/b/a) | 55,000 |
| 2011 | Operation of Albert Truck Sales (d/b/a) and Tu Familia Meat Market (d/b/a) | 34,836 |
| 2014 | Rent from Cairnsean home | 3,000 |
| All Years | Rent from McCarty and Water Oak | 39,600 |

### 4.   Description of Reorganization

The Galos intend to reorganize their finances through a combination of the following:

__X__ Increasing their income. If this box is marked, complete the following:

Specifically, how do the Galos intend to increase their income?

Mr. Galo has been able since March 2013 to devote virtually 100% of his time to the operation of his business. The buying and selling of vehicles requires him to travel extensively both inside the US and outside the country. He has virtually doubled his monthly income by his efforts and believes he can continue to increase his income.

The Galos believe that their income in each of the next five years will be:

| Year | Source | Income |
|------|--------|--------|
| 2014 | All Sources* | $270,200 |
| 2015 | All Sources* | $290,200 |
| 2016 | All Sources* | $290,200 |
| 2017 | All Sources* | $300,200 |
| 2018 | All Sources* | $310,200 |

*Includes income from Albert Truck Service, Ltd and GNRK Export Truck & Equipment Sales, Ltd. and Rental Property.

## 5. Classification and Treatment of Claims

The following is the classification and treatment of claims under this plan:

| Class # | Description of Class | Impaired or Unimpaired | Interest Rate, if any | Total Amount of Claims Forecast to be in this Class | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 |
|---------|----------------------|------------------------|-----------------------|-----------------------------------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------|------------------------------|-------------------------------|-------------------------------|-------------------------------|-------------------------------|
| 1 | Secured Claim of Woodforest National Bank secured by Market, Manitou and McCarty | Impaired | 5.00 % | $ 559,887.71 | Pay$7,353.00 per month until claim is paid in full. All liens to remain in place. All other terms and conditions of the Note and Loan Documents to remain in effect. A copy of the Modification Agreement is attached hereto as Exhibit "A". | $88,236 | $88,236 | $88,236 | $88,236 | $88,236 |
| 2 | Secured Claim of Jeff Copeland | Unimpaired | Contract Rate | $ 42,000.00 | Claim to continue to be paid according to | $ 9,600 | $ 9,600 | $ 9,600 | $ 9,600 | $ 9,600 |

Exhibit A to Confirmation Order

| Class # | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 |
|---|---|---|---|---|---|---|---|---|---|---|
| | secured by Water Oak | | | | contract. All liens to remain in place. | | | | | |
| 3 | Secured Claim of Santander Consumer secured by 2012 Nissan Pathfinder | Unimpaired | $ 26,362.79 | Contract Rate | Claim to be paid per the agreement by third party per agreement. All liens retained until paid in full. | | | | | |
| 4 | Secured Claim of Wells Fargo secured by homestead on Cairnsean | Impaired | $49,834.83 | 5.00 % | Claim to be amortized over 60 months with the first payment beginning on the 1st day of the month following 30 days after the Effective Date. All liens will remain in place . | $ 11,280 | $ 11,280 | $11,280 | $ 11,280 | $ 11,280 |
| 5 | All Claims of the IRS | Impaired | $ 12,845.21 | 3.0% | Claim will be paid through 60 monthly payments with the first payment due on the 1st day of the first full month after the Effective Date. | $ 2,772 | $ 2,772 | $ 2,772 | $ 2,772 | $ 2,772 |
| 6 | Advalorem Tax Claimants (Harris County, Channelview ISD and Barker Cypress M.U.D. and Montgomery County** | Impaired | $ 59,900.28 | 12% | Claims will be paid over 48 months in equal monthly installments beginning 30 days after the Effective date to each of the tax claimants until claim paid in full. All liens will remain in full effect.   See | $ 7,514 | $ 7,514 | $ 7,514 | $ 7,514 | |

| Class # | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 | Total payable in Months 37-48 | Total payable in Months 49-60 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | itemization of claims and default language below.* | | | | | |
| 7 | Priority Claim of TX Dept of Public Safety | Unimpaired | $ 1,990 | None | Claim will be paid in full on the Effective Date. | | | | | |
| 8 | Secured Claim of Glencairn HOA | Unimpaired | $1,575.63 | None | Claim will be paid in full on the Effective Date. | | | | | |
| 9 | Malmgren Claim | Impaired | $200,000 | None | Pay $1,750.00 per month until claim is paid in full per the Settlement Agreement. A copy of the Settlement Agreement is attached hereto as Exhibit "B". | $21,000 | $21,000 | $21,000 | $21,000 | $21,000 |
| 10 | General Unsecured Claims | Impaired | | | All excess income paid annually on the last day of the month following the end of the Plan Year. All income remaining in Debtor's bank account at the end of the Plan will be disbursed to Unsecured Creditors | 10,000 | 45,000 | 45,000 | 45,000 | 60,000 |
| | TOTALS | | | | | $150,402 | $185,402 | $185,402 | $185,402 | $192,388 |

**As to the taxing authorities, default shall occur if a scheduled Plan payment is not made by the Debtor or its current post-petition taxes are not paid timely pursuant to state law.  In the event of default, the

Exhibit A to Confirmation Order

taxing authority shall send written notice of default to Debtor's attorney.  If the default is not cured within ten (10) days after notice of default is received, the taxing authority shall proceed with its state law remedies for collection of all amounts due under state law pursuant to Texas law.  The claims are as follows:

Harris County $18,643.08
Channelview ISD $1,333.03
Barker-Cypress M.U.D. $4,027.55
Montgomery County $47.70

Only holders of claims that are "impaired" have the right to vote to accept or reject the plan. If a claim is not marked as impaired, it will be paid in accordance with the pre-petition contract that governs the claim.  If there is a discrepancy between the payments reflected in the above chart and the pre-petition contract, the pre-petition contract will control.

The forecast claims in this class are the amount of claims that the Galos believe will ultimately be allowed by the Court.

### 6. Payment of Administrative Claims

Administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of this bankruptcy case.  These claims will be paid in cash on the Effective Date of the plan, unless a written agreement to the contrary is made with the holder of any such allowed claim.

The Court must approve all professional fees listed in this table.  Professionals must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be required to be paid under this plan.

The Debtor paid Rogers & Anderson, PLLC a retainer of $10,000 at the beginning of this case.  That retainer should be sufficient to cover all of the legal fees.  There are no other administrative expenses.

## 7. Forecasts

Based on the preceding forecasts of income and expenses and on the provisions of the plan, the Galos provide these forecasts of his cash flow:

| | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|
| Beginning cash balance | $15,500 | $17,725 | $17,485 | $(139) | $6,614 |
| Income from Employment | $ 230,000 | $250,000 | $250,000 | $260,000 | $270,000 |
| Rental income | $ 40,200 | $ 40,200 | $ 40,200 | $ 40,200 | $ 40,200 |
| Other income | $ | $ | $ | $ | $ |
| TOTAL INCOME | $270,200 | $290,200 | $290,207 | $300,200 | $310,200 |
| Taxes on income | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $10,000 |
| Property taxes | $17,075 | $17,075 | $17,075 | $17,075 | $17,075 |
| Insurance | $ 27,000 | $27,000 | $27,000 | $27,000 | $27,000 |
| Household expenses | $ 20,000 | $20,000 | $20,000 | $20,000 | $20,000 |
| Charitable Contr. | $00 | $00 | $00 | $00 | $00 |

Exhibit A to Confirmation Order

| | | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|---|
| Business expenses | | $00 | $00 | $00 | $00 | $00 |
| Transportation expenses | | $7,200 | $7,200 | $7,200 | $7,200 | $7,200 |
| Medical and dental | | $4,800 | $4,800 | $4,800 | $4,800 | $4,800 |
| Domestic support payments | | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Education and entertainment | | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 |
| Other expenditures (Rent on home) | | | | | | |
| TOTAL EXPENDITURES | | $36,075 | $36,075 | $36,075 | $36,075 | $36,075 |
| NET CASH FLOW THIS PERIOD | | $60,125 | $80,125 | $90,125 | $90,125 | $90,125 |
| Payments Pursuant to Plan | | $157,401 | $185,402 | $185,402 | $185,402 | $185,402 |
| Cash Flow this Period after Plan Payments | | $8,242 | ($63,777) | ($3,274) | $8,574 | $8,574 |
| Ending Cash balance | | $14,732 | $12,145 | $14,891 | $6,614 | $6,851 |

Exhibit A to Confirmation Order

### 8. Disposable Income Test

If an unsecured creditor objects to confirmation, the plan can be confirmed only if it provides for a 100% distribution to creditors; or a distribution to creditors that is of a value of not less than the debtor's projected disposable income to be received during the longer of (i) the 5-year period beginning on the date that the first payment is due under the plan; or (ii) the term of the plan. Disposable income is the difference between income and necessary expenses.

Notwithstanding any provision in this plan to the contrary, the Galos commit to make payments of a value not less than required by the preceding paragraph. It is the intention of the Galos to pay their unsecured creditors in full.

### 9. Absolute Priority Rule--Cramdown

This section only applies if a class of unsecured claims does not accept the plan. In that instance, the Debtor seeks confirmation of the plan pursuant to § 1129(b). The law is unclear whether the Absolute Priority Rule would apply in this individual chapter 11 case. The Absolute Priority Rule is contained in § 1129(b)(2)(B) of the Bankruptcy Code. If a class of unsecured claims has not voted to accept the plan, the Absolute Priority Rule provides that the debtor may not retain property unless the holders of claims in the class are paid in full.

If a class of unsecured claims does not accept this plan, the Galos will (mark all that apply):

_____      Allege that the Absolute Priority Rule does not apply in a chapter 11 case in which the debtors are individuals.

_____      Withdraw this plan.

_____      Sell or surrender all of their non-exempt property and pay any resulting proceeds to their creditors.

_X_____      Increase the distribution to the holders of unsecured claims such that each holder is paid in full.

_____      Other: Debtor will probably convert this case to a Chapter 7.

### 10. Liquidation Analysis

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Galos' assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full, with interest. This also satisfies the requirements of § 1129(a)(7).

Holders of general unsecured claims are forecast to receive a dividend of 1515% of their allowed claim. The Galos have estimated that their assets, after payment of liens would generate the following amounts in a chapter 7 liquidation:

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|
| Automobiles | $ 43,900 | 0 | $ 43,900 | NADA Value |
| Household Furnishings, Etc | $ 3,375 | | $ 3,375 | Estimated |
| Homestead | $ 85,824 | $38,147 | $ 0.00 | HCAD |
| McCarty, Manitou and Market Street Properties | $ 664,601 | $ 557,991 | $ 106,610 | HCAD |
| Water Oak Real Property | $ 78,200 | $ 42,000 | $36,200 | Actual Value |
| Lots in El Salvador and in New Caney | $ 75,500 | $0.00 | $75,500 | Estimated Value |
| Stock and ownership in businesses | $ 2,500 | $0.00 | $ 2,500 | Balance Sheet Value |
| Cash | $ 6,416 | $0.00 | $ 6,416 | Actual Value |
| | TOTAL | | $ 232,146 | |

In a chapter 7 liquidation, the estimated liquidation value would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims. This would produce the following:

| | | |
|---|---|---|
| Liquidation Value | $ | 232,156 |
| Estimated Trustee's Fees and expenses | | 15,000 |
| Estimated priority claims | | 12,845 |
| Total available for holders of unsecured claims | | 204,311 |
| Estimated unsecured claims | $ | 171,311 |
| Estimated percentage recovery in liquidation | | 100% |

### 11.  Prepayment

Any claim may be prepaid at any time, without penalty.  Interest as provided in this plan must be paid through the date of prepayment.

### 12.  Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes.  For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss.  This will depend on the holder's own tax characteristics and cannot be assured.  Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the plan on you.

The Galos may also have a federal income tax effect from the plan.  To the extent that indebtedness is discharged, the Galos may have a basis adjustment in their assets.  Moreover, any sale of assets may produce taxable income.  The forecasts set forth above incorporate the Galos' best estimate of the federal income tax effect of the plan.

### 13.  Executory Contracts and Leases

The Debtors have two month to month rental agreements but no leases or executory contracts that require assumption.

### 14.  Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the plan.  This deadline may be extended by the Court, on motion by a party in interest.  Any such motion must be filed not later than 30 days after entry of the order confirming the plan.

### 15.  Additional Provisions

None.

### 16.     Discharge, Vesting and Effective Date

Upon completion of all payments, the Galos must file a motion for discharge, served on all holders of allowed claims, in which they will certify that (i) they meet the standards set forth in § 1141(d)(5)(C) of the Bankruptcy Code; and (ii) have completed all payments under the plan.  Unless a party objects and the Court sustains the objection to the motion for discharge, the Galos will be discharged of their liability on debts to the maximum extent allowed by § 1142 of the Bankruptcy Code.

Pending completion of the payments under the plan, the plan's provisions bind all persons to the extent allowed by § 1141(a) of the Bankruptcy Code.

All estate property is vested in the Galos on the Effective Date of the plan, free and clear of all claims and interests except (i) as provided in this plan; and (ii) for claims and interests that are excepted from discharge under § 523 of the Bankruptcy Code.

This Effective Date of this plan is the 15th day after entry of the order confirming the plan, unless the confirmation order is stayed.  If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay.  No party may act pursuant to this plan prior to the Effective Date.

**17.  Conclusion**

Santano and Ludy Galo have filed this plan and disclosure statement. They represent that they believe the information contained in this document to be true and correct in all respects.

Dated: June 11, 2014

                                                 /s/ Santano A. Galo
                                                 Santano A Galo, Debtor

                                                 /s/ Ludy A. Galo
                                                 Ludy A. Galo, Debtor

Submitted through their counsel:
Barbara M. Rogers
Rogers & Anderson, PLLC
1415 N. Loop West, Suite 1020
Houston, Texas 77008
Phone: 713-868-4411
Fax: 713-868-1413
brogers@ralaw.net

# MODIFICATION AGREEMENT

THIS AGREEMENT is entered into on the date hereinafter set forth, by and between Woodforest National Bank ("Woodforest") and Santano Alberto Galo and Ludy A. Galo ("Galos"), and shall be effective as of December 1, 2013.

W I T N E S S E T H:

WHEREAS, on the 26th day of February, 2007, the Galos executed a Promissory Note ("Note") payable to the order of Woodforest National Bank, in the original principal sum of SIX HUNDRED EIGHT THOUSAND, SIX HUNDRED TWENTY-EIGHT, AND 14/100 DOLLARS ($608,628.14); and

WHEREAS, the payment of the Note, is secured by the following described property, to-wit:

Lots One (1), Two (2), Fifteen (15), and Sixteen (16), in Block Forty-Eight (48), of PORT HOUSTON, an addition in Harris County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 57 of the Map Records of Harris County, Texas;

Lots One Hundred Seventy-Eight (178) and One Hundred Seventy-Nine (179), in Block Five (5). of O.S.T. ACRES, SECOND ADDITION, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 16, Page 54, of the Map Records of Harris County, Texas; and

A tract of land containing 16,800.00 square feet, being a part of Lots Five (5) and Six (6) in Block One (1) of GREENS BAYOU PARK, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 12, Page 31 of the Map Records of Harris County, Texas;

together with all improvements now and as hereafter located thereon (such realty and improvements being hereinafter collectively called the "Property"); and

WHEREAS, the Note is secured in accordance with the terms of the following:

Modification Agreement effective June 10, 2010, executed by the Galos and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. 20100431171; and

Extension, Modification, Consolidation, and Increase of Multiple Real Estate Notes and Liens dated February 26, 2007, executed by the Galos and filed for record in the

office of the County Clerk of Harris County, Texas, under Clerk's File No. 20070505707; and

Deed of Trust, dated September 23, 2004, executed by the Galos, and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. Y035814; and

Deed of Trust, dated June 25, 2004, executed by the Galos, and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. X727747; and

Deed of Trust, effective June 12, 2002, executed by the Galos, and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. V876014; and

Deed of Trust, dated March 28, 2002, executed by the Galos, and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. V704883; and

Deed of Trust, dated March 8, 2001, executed by the Galos, and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. U925230; and

Deed of Trust, dated October 17, 2000, executed by the Galos, and filed for record in the office of the County Clerk of Harris County, Texas, under Clerk's File No. U688778; and

WHEREAS, in consideration of Woodforest's willingness to modify the terms of payment of the Note, in return for the Galos' willingness to agree to certain terms and conditions, Woodforest has agreed to modify the terms of payment of the Note, as described in this Agreement,

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS THAT:

In consideration of Woodforest, the present legal owner and holder of the Note, consenting to modify the Galos' obligations contained in the Note and the instruments securing the Note, the Galos do acknowledge and agree that:

1.   As of November 6, 2013, the principal balance of the Note is $526,453.07, with accrued

interest due in the amount of $23,531.20, plus late fees in the amount of $9,903.44, for a total

amount due as of November 6, 2013 of $559,887.71, plus attorneys fees and expenses incurred in the course of the Chapter 11 bankruptcy of the Galos, and another monthly installment payment in the amount of $5,879.11, is due to be paid by the Galos on November 10, 2013.

2.    The Galos agree to repay the amounts owed with interest at five percent (5%) per annum, beginning with the first (1st) such payment in the amount of $4,428.00 on December 10, 2013, and continuing on the tenth (10th) day of each consecutive month, until one final payment is due on November 10, 2028 in the amount of all unpaid principal, interest, late fees, and attorneys fees and expenses owed, on the Note.

3.    The Galos agree to escrow the payment of the *ad valorem* property taxes and insurance on the Property, including property, liability, and flood insurance, on a monthly basis by paying one-twelfth (1/12) of the estimated amounts due to be paid for the successive twelve month period, which will require the Galos to pay an additional $2,925.00 per month beginning with the first such monthly escrow payment on December 10, 2013.  This monthly escrow payment will be adjusted by Woodforest as may be required to cover the estimated amounts of *ad valorem* property taxes and insurance which need to be paid over the course of the term of repayment of the Note.

4.    The monthly payments shall be funded by automated clearinghouse debit.

5.    The Galos must pay the 2013 *ad valorem* property taxes on the Property in accordance with the terms of their Chapter 11 Plan, assuming that this Chapter 11 Plan is confirmed, and if the Galos' Chapter 11 Plan is not confirmed, these 2013 *ad valorem* property taxes on the Property shall be paid in full on or before January 31, 2014 without the Galos granting any lien in the Property which would have priority over the liens held by Woodforest.

All liens described in this Agreement and all other liens, agreements, and instruments securing payment of the Note are valid and subsisting and shall remain valid and subsisting against the Property and any other collateral securing the amounts owed on the Note.

The Galos promise and agree to pay the Note, as modified, and to fulfill all obligations and covenants, in accordance with this Agreement and all other liens and agreements with Woodforest, and the Galos shall keep and timely perform all obligations thereunder.

The Galos further promise and agree that all of the terms and conditions, covenants and stipulations contained in the Note, deeds of trust, assignments, security agreements, and any other agreements or instruments securing or evidencing the indebtedness, are and shall remain in full force and effect and that the above described lien or liens, assignments, and security agreements, shall in no manner be affected or impaired hereby.  Any default by the Galos in the performance of the Galos' obligations in this Agreement shall constitute a default under the Note, deeds of trust, assignments, security agreements, and any other agreements or instruments securing or evidencing the indebtedness, and shall allow Woodforest to exercise all of its remedies set forth in the deeds of trust, assignments, security agreements, and any other agreements or instruments securing or evidencing the indebtedness.

The Galos agree to pay all costs and expenses incurred by Woodforest in connection with the execution and administration of the loan documents and any other documents executed herewith.

Woodforest does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto.

No provisions of this Agreement or the loan documents will require the payment of, or permit

the collection, application, or receipt of interest in excess of the maximum permitted by applicable

state or federal law.

EXECUTED this _____ day of _____, 20___.

By: _____
    Santano Alberto Galo

BEFORE ME, the undersigned authority, personally appeared SANTANO ALBERTO GALO, known to me to be the person whose name is subscribed on the foregoing instrument, who acknowledged to me that he or she executed the same for the purposes and consideration therein expressed, and in the capacity or capacities therein stated.

GIVEN under my hand and seal of office on this ____ day of _____, 20___.

_____
NOTARY PUBLIC in and for The
State of Texas

By: _____
    Ludy A. Galo

BEFORE ME, the undersigned authority, personally appeared LUDY A. GALO, known to me to be the person whose name is subscribed on the foregoing instrument, who acknowledged to me that he or she executed the same for the purposes and consideration therein expressed, and in the capacity or capacities therein stated.

GIVEN under my hand and seal of office on this ____ day of _____, 20___.

_____
NOTARY PUBLIC in and for The
State of Texas

AGREED AND ACCEPTED this _____ day of _____, 20___.

Woodforest National Bank

By: _____

Name:_____

Title:_____


BEFORE ME, the undersigned authority, personally appeared _____,
_____ of Woodforest National Bank, known to me to be the person whose
name is subscribed on the foregoing instrument, who acknowledged to me that he or she executed
the same for the purposes and consideration therein expressed, and in the capacity or capacities
therein stated.

GIVEN under my hand and seal of office on this ____ day of _____, 20___.


_____
NOTARY PUBLIC in and for The
State of Texas


AFTER RECORDING, PLEASE RETURN TO:

Goodwin & Harrison, L.L.P.
P.O. Box 8278
The Woodlands, Texas 77387-8278

<u>SETTLEMENT AGREEMENT</u>

On the _____ day of June, 2014, Ed Malmgren, 910 Pear Tree, Houston, TX   77073

("Malmgren"), and Santano and Ludy Galo, 6330 Olinda, Houston, TX   77041 ("Galo"),

entered into this Settlement Agreement subject to bankruptcy court approval:

WHEREAS, Malmgren obtained a judgment against Galo in Case No. 2011-63669 in the

270th District Court of Harris County, Texas;

WHEREAS, Galo filed for relief under Chapter 11 of Title 11, the Bankruptcy Code,

Case No. 13-30764, on February 5, 2013;

WHEREAS, Malmgren filed a secured proof of claim in the bankruptcy case in the

amount of $200,000.00 and an unsecured claim in the amount of $338.81 (the "Malmgren

Claim");

WHEREAS, Galo filed an objection to the Malmgren Claim;

WHEREAS, Galo filed a bill of review in an effort to vacate and nullify the state court

judgment entered against them in favor of Malmgren;

WHEREAS, Malmgren has a valid perfected first lien position on a variety of equipment

of unknown value held by Galo, as more particularly reflected on Exhibit "A" attached hereto

("Malmgren Collateral");

WHEREAS, for good and valuable consideration, the parties agree to resolve their

differences as follows:

1.      Galo will dismiss the bill of review;

2.      The parties, Galo and Malmgren, will enter into an agreed order consistent with

         this settlement agreement regarding the resolution of the objection to the

         Malmgren Claim filed by Galo;

3.    Galo will amend their plan of reorganization to provide for the payment of the Malmgren Claim without interest as follows:

    a.    First, all existing Malmgren Collateral,  other than the Malmgren Collateral already in the possession of Malmgren, shall be auctioned by Plant Machinery & Equipment, as is where is, at the premises of Galo's business located at 9838 Beaumont Highway, Houston, TX; Galo agrees to assist Plant Machinery & Equipment with set up for the auction and with cleaning the Malmgren Collateral in preparation for same; and Malmgren shall have the right to repair the Malmgren Collateral with the cost of these repairs to be paid out of the sales proceeds; and any remaining Malmgren Collateral will be sold to a salvage yard, as opposed to being sold at the conclusion of the auction;

    b.    One hundred percent of the net proceeds of the auction and sales to a salvage yard after payment of all expenses related to the auction and sale for salvage, shall be paid to Malmgren and offset against the amount of the Malmgren Claim, resulting in an Adjusted Malmgren Claim;

    c.    The Adjusted Malmgren Claim shall be paid at $1,750 per month beginning on the first day of the second full month after the date that the Plan is confirmed and these monthly payments shall continue until the claim is deemed paid in full with zero accrual of interest or fees, as set forth below, and with the additional requirement that Galo inform Malmgren of his current address during the entire repayment term;

    d.    Malmgren and Galo agree that it is in both of their best interests for the

Adjusted Malmgren Claim to be deemed paid in full and therefore, Malmgren agrees that he will grant Galo a discount in the amount of $62,500 if the entire Adjusted Malmgren Claim is paid in full on or before the first anniversary of the date of confirmation of the plan and further he will grant Galo a discount in the amount of $37,500 is the entire Adjusted Malmgren Claim is paid in full on or before the second anniversary of the date of confirmation of the plan.

e.   In the event that Galo fails to timely make the payments required under the terms of this Agreement, Malmgren shall give him written notice of such default, and shall be entitled to exercise his available legal remedies to recover payment of the amounts owed on the judgment fifteen (15) days following the date of such notice, if the payment is not received by that time.

AGREED this ___ day of _____, 2014.


_____            _____
Santano A. Galo                              Ed Malmgren
6330 Olinda                                  910 Pear Tree
Houston, TX   77041                          Houston, TX 77073

EXHIBIT "B"

| Name | Scheduled | POC | Amount Allowed | Type | Payment Instructions |
|---|---|---|---|---|---|
| Barker-Cypress MUD 6935 Barney Rd., Ste. 110 Houston, TX 77092 | $ | $ | $ 4,027.55 | Secured | $104.85 begin August 1, 2014 Through July 1, 2018 |
| Channelview ISD 828 Sheldon Rd. Channelview, TX 77530 | | $ | 1,333.03 | Secured | $34.70 begin August 1, 2014 Through July 1, 2018 |
| Jeff Copeland 9525 Katy, Fwy, Ste. 301 Houston, TX 77024 | $ 42,000.00 | | 42,000.00 | Secured | Normal Monthly Payment |
| Glencairn CIA (HOA) c/o ACMP, Inc 16650 Pine Forrest Lane Houston, TX 77084-4034 | | $ | 1,575.63 | Secured | Paid in Full July 1, 2014 |
| Harris County PO Box 3547 Houston, TX 77253-3547 | | $ | 54,492.02 | Secured | $1,408.21 begin August 1, 2014 Through July 1, 2018 |
| IRS 1919 Smith St. M/S 5022HOU Houston, TX 77002 | | $ | 13,743.36 | Secured | $246.70 begin August 1, 2014 Through September 1, 2019 |
| Montgomery County 400 N. San Jacinto Conroe, TX 77301 | | $ | 47.70 | Secured | Paid in Full July 1, 2014 |
| Santander Consumer USA, Inc PO Box 560284 Dallas, TX 75356-0284 | $ 26,362.79 | $ | 26,362.79 | Secured | Paid by Third Party |
| Wells Fargo Home Loan PO Box 10335 Des Moines, IA 50306-0335 | $ 38,147.00 | | 49,834.83 | Secured | $937.91 begin August 1, 2014 Through July 1, 2019 |
| Woodforest National Bank PO Box 7889 The Woodlands, TX 77387-7889 | $ 561,318.00 | $ | 557,990.95 | Secured | $6,419.73 monthly per Agreement, |
| Ed Malmgren 910 Pear Tree Houston, TX 77073 | | | $200,338.81 | | $1750 begin August 1, 2014 per Settlement Agreement (with possible discounts if paid early, otherwise continue payments until paid in full.) |

$ 200,338.81

Exhibit B to Confirmation Order

Galo-13-30764-Unsecured Creditors

| Name | Scheduled | POC | Amount Allowed | Percent | YR1 | YR2 | YR3 |
|---|---|---|---|---|---|---|---|
| Danann Inc. dba Black Rose Steel & Trading c/o Wells & Cueller, P.C. 440 Louisiana, Ste. 718 Houston, TX 77002 | | $ 25,681.99 | $ 25,681.99 | 40.56% | $ 4,055.60 | $ 18,250.19 | $ 3,376.20 |
| First National Bank of Omaha 1620 Dodge Steet Stop Code 3105 Omaha, NE 68197 | | $ 3,609.82 | $ 3,609.82 | 5.70% | $ 570.05 | $ 2,565.22 | $ 474.55 |
| IRS 1919 Smith St. M/S 5022HOU Houston, TX 77002 | | $ 307.36 | $ 307.36 | 0.49% | $ 48.54 | $ 218.42 | $ 40.41 |
| J.S. Wilkenfield MD & Assoc PO Box 690129 Houston, TX 77269-0129 | 180.00 | | $ 180.00 | 0.28% | $ 28.42 | $ 127.91 | $ 23.66 |
| North Cypress Medical Center PO Box 3096 Houston, TX 77253-3096 | $ 28,418.67 | | $ 28,418.67 | 44.88% | $ 4,487.76 | $ 20,194.93 | $ 3,735.97 |
| O'Rourke Petroleum Products National Judgment Recovery Center as assignee) 3346 East T.C. Jester, Ste. B-23 Houston, TX 77018 | $ 6,096.59 | $ 3,136.96 | 3,136.96 | 4.95% | $ 495.38 | $ 2,229.19 | $ 412.39 |
| TX Dept of Public Safety Motor Carrier Bureau 6200 Guadalupe, Bldg. P Austin, TX 78752 | $ 1,990.00 | $ 1,990.00 | 1,990.00 | 3.14% | $ 314.25 | $ 1,414.14 | $ 261.61 |
| | | | $ 63,324.80 | 100.00% | $ 10,000.00 | $ 45,000.00 | $ 8,324.80 |

Exhibit B to Confirmation Order